E-FILED
Wednesday, 20 September, 2006 04:14:15 PM
Clerk, U.S. District Court, ILCD
FILED
JUL 2 9 2005
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 05 CR 548 |
| vs. | ) | |
| | ) | Judge Nan R. Nolan |
| ROLAND BOYCE | ) | **UNDER SEAL** |
| | ) | |

**GOVERNMENT'S MOTION TO REVOKE ORDER OF RELEASE
PURSUANT TO 18 U.S.C. §§ 3142 AND 3148 AND ISSUE A BENCH WARRANT**

Now comes the UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and moves this Honorable Court pursuant to 18 U.S.C. §§ 3142 AND 3148 to revoke the June 16, 2005 Order Setting Conditions of Release. In support of its motion, the government states as follows:

1. On June 16, 2005, defendant ROLAND BOYCE entered a plea of not guilty to knowingly and intentionally distributing a controlled substance, namely approximately 54.5 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1).

2. On June 16, 2005, defendant was released from custody pursuant to an Order Setting Conditions of Release. One of the conditions of the release required the defendant to be placed on Home Incarceration, restricting defendant at all times except for medical needs or treatment, religious services, and court appearances pre-approved by the pretrial services office or supervising officer.

3. On July 29, 2005, the undersigned Assistant United States Attorney received information from David Franklin of Pre-Trial Services that defendant was not at his home when the pretrial

services officer went there to check on him and was informed by defendant's sister that the defendant had moved.

4. Section 3148(b) of the United States Code sets forth the mechanism for a court to revoke a defendant's bond if the defendant violates his conditions of release. Milhelm v. United States, 834 F.2d 118, 122 (7th Cir. 1987) (Section 3148(b) applies when any condition of release is violated). Bond should be revoked under Section 3148(b) if: (1) there is probable cause to believe that the defendant has committed a federal, state, or local crime on release, or clear and convincing evidence that the defendant has violated any other condition of his release; and (2) there is no combination of conditions of release that will prevent the defendant from fleeing or posing a danger to the safety of any other person or the community, or the person is unlikely to abide by any condition or combination of conditions of release. United States v. Santiago, 826 F.2d 499, 504 (7th Cir. 1987).

6. Section 3142(e)'s presumption concerning risk of flight and danger to the community applies in this case. The defendant cannot rebut this presumption, because he is current a fugitive.

7. As to danger to the community, the defendant poses a serious danger to the public because of his refusal to comply with the Court's orders.

8. In addition, defendant's bond should be revoked under Section 3148 because there is clear and convincing evidence that defendant violated multiple conditions of his release. He has violated the condition of reporting to pretrial services. In addition, he failed to follow the restrictions of Home Incarceration. Any one of these violations, alone, would be sufficient for this Court to revoke defendant's bond. Together, they are overwhelming.

9. Defendant's violations are extremely serious. At best, he has shown contempt for this Court by ignoring the terms of his bond. At worst, the defendant is now a fugitive.

10. Given the defendant's disregard of the Court's Order, despite warnings by the Court, the United States, Pre-Trial Services, defendant is unlikely to abide by the conditions of release as this case progresses.

11. A bond is about trust. By permitting a defendant to be released on bond, the Court is placing trust in the defendant to comply with the conditions of release that it believes are necessary to ensure the community's safety and the defendant's appearance at future court proceedings. Defendant has breached this trust, and his bond should be revoked under Sections 3142 and 3148(b).

WHEREFORE, the United States respectfully requests that this Court revoke the Order Setting Conditions of Release, issue a bench warrant, and order the defendant detained pending trial.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

Dated: July 29, 2005    By:    s/ AUSA

MARGARET A. HICKEY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7633

3

Order Form (01/2005)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| CASE NUMBER | 05 CR 548 | DATE | 7/29/2005 |
| CASE TITLE | USA vs. Roland Boyce | | |

**DOCKET ENTRY TEXT:**

The Government's Motion to Revoke Order of Release and to issue a Bench Warrant as to Roland Boyce for violating his Order Setting Conditions of Release entered on 6/16/05 is granted in part. A bench warrant is to issue for the arrest of Roland Boyce and he is to be brought before a magistrate judge to show cause as to why his order of release should not be revoked. *AK*

Docketing to mail notices.

BW Issued
JUL 29 2005

| | Courtroom Deputy Initials: | AC |
|---|---|---|

05CR548 USA vs. Roland Boyce      Page 1 of 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

FILED
JUN 1 6 2005

UNITED STATES OF AMERICA　MAGISTRATE JUDGE NAN R. NOLAN　APPEARANCE BOND FOR
　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

VS.　　　　　　　　　　　　　　　　　　　)　Case No. 05CR 548

Roland Boyce A/K/A Lil Gino

I, the undersigned, acknowledge that I am bound to pay to the United States of America the sum of **Ten Thousand** dollars ($10,000.00), OWN RECOGNIZANCE.

The conditions of this bond are that I will appear before the United States District Court for the Northern District of Illinois at Chicago, Illinois, and at such other places as I may be required to appear, in accordance with any and all orders and directions relating to my appearance in the above-entitled matter as may be given or issued by a Magistrate Judge or Judge of the United States District Court to which I may be removed or the Cause transferred; I am not to depart the Northern District of Illinois, or the jurisdiction of any other United States Court to which I may be removed or transferred after I have appeared in such other district pursuant to the terms of this bond, except in accordance with such orders or warrants as may be issued by the Magistrate Judge or the United States District Court for the Northern District of Illinois or the United States District Court for such other district: That I am to abide by any judgment entered in such matter by surrendering myself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the Court imposing it may prescribe.

If I appear as ordered and otherwise obey and perform the foregoing conditions of this bond, then this bond is to be void; but if I fail to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court against me for the amount stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

I agree and understand that this is a continuing bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as I am duly exonerated.

This bond is signed on this **16** day of **June** at Chicago, Illinois.

　　　　　　　　　　　　　　　　　　　　　　　s/ Defendant
　　　　　　　　　　　　　　　　　　　　　　　Signature of Defendant

Signed and acknowledged before me this **16** day of **June**, 20**05**.

　　　　　　　　　　　　　　　　　　　　　　　Jackie Johnson
　　　　　　　　　　　　　　　　　　　　　　　Magistrate Judge　　　Deputy Clerk

**PLEASE PRINT**
**DEFENDANT INFORMATION**

Name: s/ Defendant　　　　　　　　　　(Individual Who Can Contact Defendant)

Address:　　　　　　　　　　　　　　　Name: Doug Whitney

City and State: Chicago Ill　　　　　　Address:

　　　　　　　　　　　　　　　　　　　Phone:

(Revised 7/00)

AO 199A (Rev. 6/97) Order Setting Conditions of Release　　　　　　　　　　　　　　　　Page 1 of 3 Pages

# United States District Court

__Northern__ DISTRICT OF __Illinois__

UNITED STATES OF AMERICA

v.

__Roland Boyce aka "Lil Gino"__
　　　　Defendant

ORDER SETTING CONDITIONS
OF RELEASE

Case Number: 05CR 548

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing before any change in address and telephone number.

(3) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) __Dirksen Federal Building__ on __June 21, 2005 at 11:00 a.m.__
　　　　　　　　　　　　　　　　　　　　　　　　　　Place　　　　　　　　　　　　　　Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

(✔) (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(✗) (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of __ten thousand dollars__ dollars ($__10,000.00__) in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

WHITE COPY — COURT　　YELLOW — DEFENDANT　　GREEN — PRETRIAL SERVICES　　BLUE — U.S. ATTORNEY　　PINK — U.S. MARSHAL

AO199B (Rev. 5/99) Additional Conditions of Release                                             Page __2__ of __3__ Pages

## Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

( ) (6) The defendant is placed in the custody of:
(Name of person or organization) _____
(Address) _____
(City and state) _____ (Tel. No.) _____

who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed: _____  _____
                                                      Custodian or Proxy             Date

(X) (7) The defendant shall:
( ) (a) report to the _Pretrial Services as directed_
      telephone number _____, not later than _____.
( ) (b) execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property: _____
( ) (c) post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described _____.
( ) (d) execute a bail bond with solvent sureties in the amount of $ _____.
(X) (e) maintain or actively seek employment.
( ) (f) maintain or commence an education program.
( ) (g) surrender any passport to: _____
(X) (h) obtain no passport.
( ) (i) abide by the following restrictions on personal association, place of abode, or travel: _____
( ) (j) avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to: _____
( ) (k) undergo medical or psychiatric treatment and/or remain in an institution as follows: _____
( ) (l) return to custody each (week)day as of _____ o'clock after being released each (week)day as of _____ o'clock for employment, schooling, or the following limited purpose(s): _____
( ) (m) maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.
(X) (n) refrain from possessing a firearm, destructive device, or other dangerous weapons.
(X) (o) refrain from ( ) any (X) excessive use of alcohol.
(X) (p) refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.
(X) (q) submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.
( ) (r) participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services office or supervising officer.
( ) (s) refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibit substance testing or electronic monitoring which is (are) required as a condition(s) of release.
(X) (t) participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) will or ( ) will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program based upon your ability to pay as determined by the pretrial services office or supervising officer.
    ( )(i) **Curfew.** You are restricted to your residence every day ( ) from _____ to _____, or ( ) as directed by the pretrial services office or supervising officer; or
    ( )(ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or
    (X)(iii) **Home Incarceration.** You are restricted to your residence at all times except for medical needs or treatment, religious services, and court appearances pre-approved by the pretrial services office or supervising officer.
( ) (u) report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.
( ) (v) _____
( ) (w) _____
( ) (x) _____

WHITE COPY — COURT     YELLOW — DEFENDANT     GREEN — PRETRIAL SERVICES     BLUE — U.S. ATTORNEY     PINK — U.S. MARSHAL

AO 199C (Rev 6-97) Advice of Penalties... Page 3 of 3 Pages

## Advice of Penalties and Sanctions

**TO THE DEFENDANT:**

**YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:**

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to 10 years of imprisonment, and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; to retaliate or attempt to retaliate against a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgement of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_s/ Defendant_
Signature of Defendant

_____ Address

_Chicago_
City and State                           Telephone

## Directions to United States Marshal

(X) The defendant is ORDERED released after processing.
( ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: 6-16-05

s/ U.S. Magistrate Judge
Signature of Judicial Officer

US Magistrate
Name and Title of Judicial Officer

WHITE COPY - COURT    YELLOW - DEFENDANT    GREEN - PRETRIAL SERVICE    BLUE - U.S. ATTORNEY    PINK - U.S. MARSHAL

*U.S. GPO: 1998-761-077/60049

AO 91 (REV.5/85) Criminal Complaint          AUSA CHRISTINA EGAN 312-353-4095

# UNITED STATES DISTRICT COURT

__NORTHERN__ DISTRICT OF __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

ROLAND BOYCE aka "LIL GINO"

FILED JUN 1 4 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

RECEIVED JUN 15 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE NOLAN

CRIMINAL COMPLAINT

CASE NUMBER: **05CR0548**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about __May 3, 2004__ in the __Northern__ District of __Illinois__, defendant did knowingly and intentionally distribute a controlled substance, namely approximately 54.5 grams of mixtures containing cocaine base in the form of crack cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title __21__ United States Code, Section __841(a)(1)__

I further state that I am an __ATF Special Agent__ and that this complaint is based on the following facts:
Official Title

See Attached Affidavit.

Continued on the attached sheet and made a part hereof:  __X__ Yes  ___ No

s/ Agent
Signature of Complainant

Sworn to before me and subscribed in my presence,

__June 15, 2005__                       at      __Chicago, Illinois__
Date                                             City and State

__Hon. Nan R. Nolan   U.S. Magistrate Judge__      __s/ U.S. Magistrate Judge__
Name & Title of Judicial Officer                  Signature of Judicial Officer

STATE OF ILLINOIS )
)
COUNTY OF COOK )

### AFFIDAVIT

I, Jeffrey Sisto, being first duly sworn on oath, state that:

1. I am a Special Agent for the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed for six years. Prior to my employment with ATF, I was employed for approximately two and one-half years as a Border Patrol Agent for the United States Department of Justice, Immigration and Naturalization Service.

2. I have received specialized training in the enforcement of laws concerning federal firearms and narcotics violations, and have been involved in various types of electronic surveillance and the debriefing of defendants, witnesses, informants, and others who have knowledge of the illegal distribution of narcotics along with the illegal possession and use of firearms.

3. I am currently assigned to an ATF firearms group that is tasked to investigate criminal street gangs on the west side of Chicago. In the course of my work, I investigate violations of federal firearms and narcotics laws as they relate to violent gang members involved in drug trafficking while armed, the use or carrying of firearms during acts of violence, and the illegal possession of a firearm by a prohibited person. I am making this affidavit based upon my own personal knowledge, information that I have received from other ATF agents and law enforcement officers, information received from an ATF confidential informant (herein after "CI"), and on information and documents that I have gathered in the course of this investigation. Because this affidavit is submitted for the limited purpose of establishing probable cause in

support of an arrest warrant, this affidavit does not set forth each and every fact I have learned during this investigation. Through my training and experience, I know that it is a violation of Title 21, United States Code, Section 841(a)(1) for any person to knowingly or intentionally distribute a controlled substance, including cocaine base, commonly known as crack cocaine.

4. A confidential informant ("CI") began cooperating with ATF in approximately December 2003. The CI has approximately eight arrests between 1995 and 2004 for charges including drugs, criminal damage to property, soliciting criminal activity, and homicide. The CI was convicted on a federal charge in 2001 for narcotics trafficking activities for which he/she was sentenced to approximately five years in prison. The CI currently has two pending state cases for drugs and homicide. The homicide offense and arrest occurred after the CI's active cooperation with law enforcement described below. At the time of his cooperation, the CI was on supervised release for his federal drug case. The CI was cooperating with the ATF for monetary considerations. The basis for the CI's information is as follows. The CI has been a member of the Body Snatchers street gang in Chicago for approximately eleven years and maintains social and narcotics trafficking relationships with members of the Body Snatchers street gang. The CI has sold narcotics in the past. The Body Snatchers is a particularly violent faction of the Four Corner Hustler Street Gang that is centralized on the west side of Chicago. The CI has told agents that ROLAND "LIL GINO" BOYCE is a member of the Body Snatchers.

5. The CI told law enforcement that on April 27, 2004, the CI met BOYCE on the corner of Waller and Thomas in Chicago to arrange for the future purchase of two ounces of crack cocaine. (This meeting was not recorded and was not made in the presence of agents.)

6. The CI also told law enforcement that on April 29, 2004, the CI telephoned BOYCE to arrange for the purchase of two ounces of crack cocaine to take place on April 30,

2

2004. According to the CI, the agreed upon price for the two ounces of crack cocaine was $1,400.00. (This telephone call was not recorded and was not made in the presence of agents.)

7. On April 30, 2004, ATF agents met with the CI at a pre-determined location to discuss plans for the "controlled buy" of two ounces of crack cocaine from BOYCE. At the briefing location and at the direction of ATF agents, the CI telephoned BOYCE to arrange for the purchase of two ounces of crack cocaine for $1,400.00. Law enforcement was within several feet of the CI when he/she placed the telephone call to BOYCE and was able to hear the statements made by the CI. The telephone call lasted less then ten seconds. During the call, law enforcement heard the CI state, "meet you on Superior at 2:00 p.m." According to the CI, he/she was repeating statements made by BOYCE during the telephone call. The conversation was electronically recorded and was made in the presence of ATF agents. However, due to a recording malfunction the tape was inaudible.

8. ATF agents searched the CI and the CI's vehicle for contraband with negative results. The CI was equipped with an electronic recording device and $1,400.00. Under surveillance of ATF agents, the CI traveled to the location to meet BOYCE and purchase the two ounces of crack cocaine.

9. The CI arrived in his/her vehicle at Superior and Mayfield to meet with BOYCE. CI approached BOYCE who was sitting in a parked green vehicle. BOYCE told the CI to met him "at 3:00 P.M. at Waller and Thomas Street." The entire conversation between the CI and BOYCE was recorded. In addition to the audio recording, ATF agents in a fixed surveillance position recorded the meeting between the CI and BOYCE on video.

10. The CI departed the location and traveled to a pre-determined de-briefing location to meet with ATF agents. Under constant surveillance of ATF agents and still equipped with the

3

electronic recording device, the CI traveled to Waller and Thomas Street to meet BOYCE and purchase the two ounces of crack cocaine. After waiting for BOYCE a short time, the CI departed the location without meeting BOYCE.

11.  According to the CI, later that day, BOYCE contacted the CI and told him/her he had the two ounces of crack cocaine. BOYCE and the CI then rescheduled the purchase of two ounces from BOYCE for May 3, 2004. This telephone call was not made in the presence of agents and was not recorded.

12.  On May 3, 2004, ATF agents and the CI met at a pre-determined location to discuss plans for the purchase of two ounces of crack cocaine from BOYCE. At the meeting location, the CI made a recorded telephone call to BOYCE. BOYCE asked the CI if he was ready and then told the CI to meet him by himself at the North Riverside Mall. In addition to being recorded, the telephone call to BOYCE was made in the presence of ATF agents.

13.  ATF agents searched the CI and the CI's vehicle for contraband with negative results. The CI was equipped with an electronic recording device and $1,400.00. Under surveillance of ATF agents, the CI traveled to the North Riverside Mall to meet BOYCE and purchase the two ounces of crack cocaine. According to the CI, while en-route to the North Riverside Mall, BOYCE called the CI and told him/her to meet him in the McDonalds parking lot located next to the North Riverside Mall. This telephone call was not made in the presence of agents and was not recorded.

14.  Under the surveillance of ATF agents the CI entered the McDonalds parking lot in his/her vehicle. While the CI was looking for a parking spot, ATF agents observed BOYCE walk up to the CI's vehicle and jump into the front passenger seat. Due to his surveillance position, one of the ATF agents was able to observe the CI make motions as though he/she had

4

handed BOYCE something, although he could not see the CI's or BOYCE's entire body. That ATF agent then observed BOYCE making gestures as though he were counting money. That ATF agent also heard, through the monitoring device, at that time sounds consistent with paper shuffling, as if money were being counted. (The CI later told agents that he/she had handed BOYCE the $1,400.00 for the two ounces of crack cocaine.) During this time, BOYCE asked the CI for "thirteen" and then told the CI to meet him on "Waller and Thomas in thirty minutes" because he had to pick up the "merch." Before departing the CI's vehicle BOYCE's swore on "Kentay." (Interviews with current Body Snatcher gang members reflect that "Kentay" was the nickname of Shamario Jones the founder of the Body Snatcher street gang. Shamario Jones aka "Kentay" was killed in December, 2000.) ATF agents observed BOYCE exit the McDonald's parking lot. In addition to the audio recording, ATF agents in a fixed surveillance position recorded the meeting between the CI and BOYCE on video.

15. Under constant surveillance of ATF agents and still equipped with the electronic recording device, the CI traveled to Waller and Thomas to meet with BOYCE. The CI under agent surveillance waited for a period of time and BOYCE did not appear. During that time, the CI placed calls to BOYCE to ascertain when BOYCE would arrive. These calls were unrecorded. Ultimately, BOYCE arrived in a vehicle. He parked and got out and approached the CI's vehicle. He then got into the front passenger seat of the CI's vehicle. BOYCE told the CI to drive to an alley east of Mayfield between Erie Street and Ohio Street. The CI and BOYCE under agent surveillance drove to a spot near that location. BOYCE then got out of the CI's vehicle and went into the alley. The CI remained in the vehicle. ATF agents observed BOYCE enter the alley and after several minutes observed BOYCE re-appear and enter the CI's vehicle. The CI told agents that, after BOYCE got into the vehicle, BOYCE handed the CI a

5

plastic baggie containing a chalky colored rock like substance. (Agents were unable to observe this activity that occurred inside the vehicle from their surveillance location.) BOYCE said that it was "63" (which agents understood to mean 63 grams of crack cocaine, which is approximately 2 1/4 ounces of cocaine) and told the CI that "I need a piece though." Agents understood "I need a piece" to mean that BOYCE was going to take a piece of the 63 grams for himself. The CI stated that he/she did not have a scale and BOYCE stated, "I don't have a scale either." The CI and BOYCE departed that location under the surveillance of agents, and the CI returned BOYCE to the area of Massasoit Avenue and Thomas. The CI then traveled under agent surveillance to a pre-determined de-briefing location to meet with ATF agents. At the debriefing location, the CI provided ATF agent with the plastic baggie containing a chalky colored rock like substance (suspected crack cocaine).

16. The rock like substance that was secured as evidence was sent to the United States Department of Justice, Drug Enforcement Administration (DEA), North Central Laboratory for analysis. The DEA laboratory identified the substance purchased by the CI as 54.5 grams of cocaine base.

17. On March 8, 2005, ATF agents interviewed Roland BOYCE at the Cook County Department of Corrections where he was in custody on a domestic charge. Law enforcement advised BOYCE of his *Miranda* rights. BOYCE waived his *Miranda* rights orally and in writing.

18. During the interview, BOYCE stated, among other things, that he had arranged for the sale of two ounces of crack cocaine to the CI whom he identified by name. BOYCE stated that on the date in question, May 3, 2004, he met the CI at the North Riverside mall on Harlem Avenue and Cermak Road. BOYCE stated that he got into the CI's van at the mall and the CI

6

gave him $1,300.00 for the two ounces of crack cocaine and $100.00 for brokering the deal. BOYCE stated that he told the CI to meet him in thirty minutes at Waller Avenue and Thomas Street. BOYCE stated that he then went and paid another individual whom he identified by first name $1,300.00 for the two ounces of crack cocaine. BOYCE stated that that individual told BOYCE to wait for him on Ohio Street and Mayfield Avenue and that he would deliver the crack cocaine to BOYCE there. BOYCE stated that he went and met the CI and they went together in the CI's van to Ohio Street and Mayfield Avenue to await the arrival of the individual. BOYCE stated that the individual arrived at the location with a second individual whom he also identified by first name. BOYCE stated that he told the CI to pull his van into an adjoining alley while he, BOYCE, met with the two individuals. BOYCE stated that he, BOYCE, then went into the alley with the second individual and saw the second individual give the CI, who was already in the alley, the two ounces of crack cocaine. BOYCE stated that the CI broke off a piece of the crack cocaine and gave it to BOYCE. BOYCE also provided ATF agents with a signed statement detailing, among other things, the events described above.

19. Based upon the above information, I believe BOYCE's actions were in violation of Title 21, United States Code, Section 841(a)(1) because he knowingly or intentionally distributed a controlled substance, namely cocaine base in the form of crack cocaine.

FURTHER AFFIANT SAYETH NOT.

s/ Agent
Jeffrey Sisto, Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

SUBSCRIBED AND SWORN TO BEFORE ME
this 15th day of June 2005.

s/ U.S. Magistrate Judge
NAN R. NOLAN
UNITED STATES MAGISTRATE JUDGE

8

AO 442 (Rev. 6/97) Warrant for Arrest

# United States District Court
## Northern District of Illinois
### Eastern Division

United States of America

v.

Roland Boyce

**WARRANT FOR ARREST**

Case Number: 05 CR 548

To: The United States Marshal
And any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest **Roland Boyce** and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☐ Indictment  ☐ Information  ☐ Complaint  ☒ [Order of court]  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with: Rule to Show Cause as to Why his Order of Release Should not be Revoked

in violation of Title United States Code, Section(s) _____

Marsha E. Glenn, Issuing Officer     Deputy Clerk

_[signature]_
Signature of Issuing Officer

July 29, 2005; Chicago, Illinois

Bail fixed at $ _____

_____, Judicial Officer

| RETURN |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at |
| Date Received | Name and Title of Arresting Officer | Signature of Arrest Officer |
| Date of Arrest | | |